UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Leseman, LLC,** | No. 14-CV-363 (SRN/SER) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| **Stratasys, Inc.,** | |
| **Defendant** | |

_____

Devan V. Padmanabhan, Sri K. Sankaran, Erin O. Dungan, and Nadeem W. Schwen, Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402, on behalf of Plaintiff

Timothy Grimsrud, Kenneth Liebman, and Lauren M.W. Steinhaeuser, on behalf of Defendant

_____

SUSAN RICHARD NELSON, District Judge

This matter is before the Court on Plaintiff Leseman, LLC's ("Leseman's") Appeal/Objection [Doc. No. 73] to the December 21, 2015 Order of Magistrate Judge Steven Rau ("the Order" [Doc. No. 70]). For the reasons set forth herein, Plaintiff's appeal is denied in part, denied as moot in part, and granted in part; the Order is affirmed in part and respectfully reversed in part.

1

I.  **BACKGROUND**

   A.  **Multiple Component Dies and Filaments**

This patent infringement lawsuit concerns United States Patent No. 7,329,113 ("the '113 Patent") for an "Adjustable Extrusion Die." (Compl. ¶ 7 [Doc. No. 1].) Plaintiff Leseman alleges that it is the owner by assignment of all rights in the '113 Patent (id. ¶ 8), and that Defendant Stratasys, Inc. ("Stratasys") has infringed on at least one claim of the '113 Patent by making, using, or offering for sale products that infringe on Leseman's claim. (Id. ¶ 10.) Specifically, Leseman accuses Stratasys of using extrusion dies covered by at least Claim 1 of the '113 Patent to manufacture extruded filament used in cartridges for Stratasys 3-D printers.

Stratasys denies any infringement and seeks a declaratory judgment of non-infringement and invalidity. (Answer & Counterclaims ¶¶ 9-20; 46 [Doc. No. 7].) Stratasys contends that Steven R. Leseman, the inventor of the '113 Patent, became a Stratasys employee on June 11, 2007 as Lead Extrusion Operator.[1] (Id. ¶ 25.) Stratasys contends that at the time the '113 Patent was issued on February 12, 2008, Mr. Leseman worked at Stratasys. (Id. ¶¶ 28-29.) Mr. Leseman resigned from Stratasys on October 9, 2009. (Id.)

While the magistrate judge addressed cross motions in the Order, only Plaintiff appeals his rulings with respect to its Motion to Compel, and only certain aspects of those

---

[1] The Court refers to Steven Leseman by name or title to distinguish him from Plaintiff Leseman, LLC.

rulings.  The Court therefore confines its discussion to the relevant rulings in the Order.

As noted in the Order, in January 2015, the parties informed the Court that for purposes of discovery, they had agreed to the following definition of the term "Multiple Component Dies":

> All Stratasys extrusion dies that Stratasys has manufactured, used, had manufactured, offered for sale, or sold within the United States on or after the publication date of [the '113 Patent] that (1) include three or more components; (2) were designed based on a die with three or more components; or (3) have less than three components, but at some point were used in a configuration that had three or more components.

(Joint Status Report at 1-2 [Doc. No. 35].)  The parties excluded from the definition "extrusion dies in which the components are in fixed positions and it is not possible to change the length of the die."  (Id. at 2.)  However, Stratasys agreed to make reasonable information about such dies available for inspection by Leseman's counsel.  (Id.)  Moreover, the parties agreed that their definitions would not limit the scope of discovery with respect to non-infringing alternatives.  (Id.)

Through discovery, Leseman identified the following five dies that meet the definition of "Multiple Component Dies":  (1) the Stacker Die; (2) the Stacker Die with Transition Plate; (3) the Big Die with Two Plates; (4) the Big Die with One Plate; and (5) the Mojo Support Die.  (Order at 5 [Doc. No. 70].)  Three of the Multiple Component Dies are accused of infringement:  the Stacker Die, the Stacker Die with Transition Plate, and the Big Die with Two Plates.  (Id. at 6.)

As the magistrate judge noted, a fundamental issue underlying the parties' dispute

is the relationship between the Multiple Component Dies and certain filament products. (Id.) Leseman explains that "[t]he filament is comparable to the toner or ink used in paper printers or photocopiers." (Obj. at 1 [Doc. No. 73].) The filament products discussed in the Order are: (1) the M30/P430 filament product;[2] (2) the Mojo M30 filament product; (3) the Mojo SR30 filament product; and (4) the PPSF support filament product. (Order at 6 [Doc. No. 70].)

The Stacker Die is one of the three Multiple Component Dies accused of infringing the '113 Patent. (Id.) Stratasys avers that the Stacker Die has not been used to manufacture filament products, but has been used to hasten the production of M30/P430 filament product and was used to determine the dimensions of the Big Die with One Plate. (Id.)

As to the Stacker Die with Transition Plate, another of the Multiple Component Dies accused of infringement, Stratasys contends that it has not been used to manufacture filament products. (Id. at 7.) Rather, Stratasys has used it for purposes of research and development. (Id.)

The third of the three Multiple Component Dies accused of infringement, the Big Die with Two Plates, was used to make the Mojo SR30 filament product. (Id.) Leseman contends that some variation on this die was used by Carrie Ginder, a Stratasys employee, in the course of a Stratasys project called "Project Solo," and that this variation falls

---

[2] The terms M30 and P430, or M30/P430, refer to the same product. (Order at 6, n.3)

4

within the definition of "Multiple Component Die." (Id.) (citing Pl.'s Mem. Supp. Mot. to Compel at 10.) However, Stratasys asserts that while Ginder experimented with various plates, there was never a separate Multiple Component Die that was used to create the Mojo M30 filament product because Ginder's experiments were unsuccessful. (Id.) (citing Def.'s Opp'n Mem. at 5.)

As to the Big Die with One Plate, while it is a Multiple Component Die, Leseman does not accuse it of infringing the '113 Patent. (Id. at 8.) Stratasys asserts that it used the Big Die with One Plate periodically in 2008 and 2009 to manufacture the M30/P430 filament and some "compounding material" that was part of the "PPSF support filament product" from January 2009 through May 2011. (Id.)

Finally, the Mojo Support Die is a Multiple Component Die, but is not accused of infringement. (Id.) Stratasys created this die after learning that Leseman was accusing the Big Die with Two Plates of infringing the '113 Patent. (Id.) The Mojo Support Die is used to manufacture the Mojo SR30 filament. (Id.)

### B. Plaintiff's Appeal of Order on Plaintiff's Motion to Compel

Leseman's Motion to Compel sought the production of discovery in several different categories, however, Leseman appeals the magistrate judge's decision in three respects. First, the magistrate judge denied in part Leseman's request for "business case documents" and sales and cost of goods sold ("COGS") data related to the M30/P430 filament product, compelling production only for the period of 2008-09. (Order at 22-25 [Doc. No. 70].) Second, the magistrate judge denied Leseman's request altogether for the

same information related to the Mojo M30 filament product. (Id. at 17-19, 22.) Third, the magistrate judge denied Leseman's request for a Rule 30(b)(6) deposition regarding the requested discovery. (Order at 30-31 [Doc. No. 70].)

On appeal, Leseman contends that the magistrate judge erroneously ruled in limiting the requested discovery. (Obj. at 1 [Doc. No. 73].) Plaintiff therefore seeks the production of the requested information, as well as a Rule 30(b)(6) deposition concerning this information. (Id.)

## II. DISCUSSION

### A. Standard of Review

A district court's review of a magistrate judge's order on a nondispositive matter, such as the underlying motion here, is "extremely deferential." Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999); see also United States v. Raddatz, 447 U.S. 667, 673 (1980). The Court will reverse such a ruling only if it is clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a).

As the magistrate judge observed, Federal Rule of Civil Procedure 26(b)(1) provides for the discovery of any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). However, discovery may be limited if: (1) the requested discovery is unreasonably cumulative, duplicative, or can be obtained from another source that is more convenient; (2) the party seeking discovery has had ample opportunity to obtain the information; or (3) the burden or expense of the requested

discovery outweighs the its likely benefits. Fed. R. Civ. P. 26(b)(2)(C). "The management of discovery is committed to the sound discretion of the trial court." In re Missouri Dep't of Nat. Res., 105 F.3d 434, 435 (8th Cir. 1997) (citing Bunting v. Sea Ray, Inc., 99 F.3d 887, 890 (8th Cir. 1996)).

### B. "Business Case Documents" and Sales and COGS Information

Two categories of Plaintiff's requested discovery appear to be at issue on appeal: "business case documents" and sales and COGS data.[3] (Order at 9 [Doc. No. 70].) The magistrate judge correctly observed that Plaintiff's document requests did not define the term "business case documents." (Id. at 11.) However, he found that some of the documents identified by Leseman as such fell within the scope of Plaintiff's Document Request Numbers 28 and 29. (Id. at 12.) Leseman contended that business case documents and sales and COGS discovery are relevant to its damages calculations. (Id. at 14; 19.) Stratasys objected to the requests on several grounds, including relevance and burden. (Id.)

As noted by the magistrate judge, Plaintiff's damages may be based on a

---

[3] It is not entirely clear whether Plaintiff objects to the magistrate judge's ruling as to "business case documents." A caption in Leseman's brief on appeal refers only to sales and COGS documents for the M30/P430 and Mojo M30 products. (Pl.'s Obj. at 3 [Doc. No. 73].) Because the Court's damages-related rationale for the production of business case documents and sales and COGS data is the same (Order at 13-18; 19-20 [Doc. No. 70]), and because there may be some overlap between what is meant by "business case documents" and sales and COGS data, the Court construes Leseman's appeal to apply to the magistrate judge's ruling on "business case documents" as well as sales and COGS data.

reasonable royalty. (Order at 14 [Doc. No. 70].) To determine a reasonable royalty rate, courts consider a "hypothetical negotiation" between the plaintiff and defendant, to establish the royalty that a willing licensor and licensee would have negotiated at the time the alleged infringement began. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed. Cir. 1995). A "broad spectrum of other evidentiary facts probative of a reasonable royalty" may be relevant to a hypothetical negotiation. Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970). For instance, relevant information may include the "extent to which the infringer has made use of the invention; and any evidence probative of the value of that use" as well as "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." Id. at 1120.

As a general proposition, the magistrate judge found that Plaintiff was entitled to information regarding the value of Leseman's alleged use of the technology patented in the '113 Patent, "which depends on the evidence regarding the value of use of the technology in research and development and the value of the filament products whose creation or manufacture was accomplished through some use of the patented technology." (Order at 13-14 [Doc. No. 70].) Further, Magistrate Judge Rau observed that the parties' definition of Multiple Component Dies for purposes of discovery included both accused and unaccused dies and that Stratasys had agreed to conduct discovery that was not limited in scope to only the accused dies. (Id. at 13.) Thus, the magistrate judge found,

8

"in light of the parties' broad definition of Multiple Component Dies, the fact that a filament product was manufactured by an unaccused die does not, by itself, demonstrate that discovery regarding those filament products is impermissible." (Id.)

### 1. M30/P430 Filament Product

The magistrate judge found that the requested information concerning the M30/P430 filament product and PPSF support filament product was relevant, as it related to reasonable royalty calculations. (Order at 15 [Doc. No. 70].) Although these filament products were not ultimately made by a die accused of infringing the '113 Patent, Magistrate Judge Rau observed that the Big Die with One Plate, a Multiple Component Die that was itself developed using a die accused of infringement, was used in the manufacture of both the M30/P430 filament product and the PPSF support filament product. (Order at 15-16 [Doc. No. 70].) Therefore, he found that "information regarding products manufactured using the Big Die with One Plate is reflective of the extent to which Stratasys made use of the patented technology and the value of that use." (Id. at 16.) This connection, the magistrate judge found, was sufficient to warrant discovery for Plaintiff's reasonable royalty calculations. (Id.) To the extent that Stratasys had not produced business case documents within the scope of Plaintiff's Request Numbers 28 or 29, Magistrate Judge Rau ordered it to do so, and to the extent that Stratasys had already produced such documents, he denied Plaintiff's request as moot. (Id. at 12.)

As to the requested sales and COGS data concerning the M30/P430 filament, the

magistrate judge likewise considered such discovery relevant, finding it "tied to an accused die [the Big Die with One Plate] because it was manufactured using a Multiple Component Die that was developed using an accused die." (Id. at 24.)   As noted, however, Stratasys only used the Big Die with One Plate periodically in 2008 and 2009 to manufacture the M30/P430 filament, and at other times, Stratasys used a different, small die that is not an accused product nor a Multiple Component Die. (Id. at 8, 22.)

Because Stratasys did not maintain sales records reflecting which die was used to manufacture a particular filament product, the magistrate judge did not require Stratasys to isolate the sales and COGS data for the M30/P430 filament product made only with the Big Die with One Plate, finding that requiring it to do so would be unduly burdensome. (Id. at 23.)  Instead, the magistrate judge ordered Stratasys to produce the sales and COGS data concerning the M30/P430 filament as it exists, regardless of the manufacturing die used. (Id.)  However, he limited the production of this data to the time frame of 2008-2009 – the time frame in which Stratasys periodically used the Big Die with One Plate to manufacture this filament product. (Id. at 24.)

Leseman objects to the magistrate judge's temporal limitation and requests this discovery through the present. (Pl.'s Obj. at 3-4 [Doc. No. 73].)  However, the Court finds that the magistrate judge's ruling was not in error.  Stratasys only periodically used a Multiple Component Die to manufacture the M30/P430 filament product, and only during the 2009-2009 period.  Accordingly, the magistrate judge did not err in determining that the 2008-2009 period was the only potentially responsive period for

sales and COGS data as to the M30/P430 filament product. (Order at 23 [Doc. No. 70].) The evidence before the Court sufficiently demonstrated the temporally limited, periodic use of a Multiple Component Die for this product. In addition, there appears to be no dispute that from 2010 to the present, the M30/P430 filament product was manufactured using a small die, not a Multiple Component Die or an accused die. (See Pl.'s Obj. at 3 [Doc. No. 73; Def.'s Opp'n at 6 [Doc. No. 74].) Leseman makes no connection between the die used since 2010 in the manufacture of the M30/P430 filament product and the '113 Patent.

For all of these reasons, the Court affirms Magistrate Judge Rau's ruling concerning the requested discovery related to the M30/P430 filament product.

### 2. Mojo M30 Filament Product

As to the Mojo M30 filament product, the magistrate judge declined to order the production of business case documents and sales and COGS data. (Order at 17, 22 [Doc. No. 70].) The Order addressed the parties' evidence regarding whether this filament product was created using a Multiple Component Die and/or a die accused of infringement. (Id. at 17-18.) Regardless of the specific die used, the magistrate judge determined that the die was used on a very limited, experimental basis in connection with the Mojo M30 filament and proved to be unsuccessful. (Id. at 18.) After the unsuccessful effort, Stratasys returned to using a pre-existing die that is not a Multiple Component Die and is not accused of infringement. (Id.)

While Leseman argues that the question of whether the use of the product was

11

"limited" or "unsuccessful" is a fact issue for trial (Pl.'s Obj. at 6 [Doc. No. 73]), the magistrate judge did not clearly err in his discovery ruling.  The evidence shows that the only arguable use of a Multiple Component Die with respect to the Mojo M30 filament involved a failed test during the Mojo M30 product development process.  (See Order at 18 [Doc. No. 70].)  This resulted in Stratasys reverting to a preexisting die that is not a Multiple Component Die.  (Id.)

A magistrate judge must make determinations concerning relevance and burden when resolving discovery disputes and Magistrate Judge Rau appropriately did so here.  Under these facts, the Court finds that the magistrate judge properly applied principles of proportionality under Rule 26(b)(2)(C)(iii) in determining that the burden of producing business case documents and sales and COGS data regarding the Mojo M30 filament outweighed the benefits of production.

### 3. Rule 30(b)(6) Deposition

Finally, Leseman appeals Magistrate Judge Rau's denial of a request for a additional Rule 30(b)(6) testimony related to the compelled discovery production.  Plaintiff sought an order requiring Defendant to produce a Rule 30(b)(6) witness to testify regarding "the documents requested" in its Motion to Compel, i.e., the business case documents and sales and COGS data.  (Id. at 30.)  The magistrate judge observed that Leseman did not serve a Rule 30(b)(6) notice with respect to this requested information, nor did Leseman identify the topics that served as the basis for the new or additional testimony.  (Id.)  "Without evidence that an appropriate deposition notice was served on

Stratasys, the Court will not compel the deposition." (Id.) (citing Pegoraro v. Marrero, 281 F.R.D. at 122, 128 (S.D.N.Y. 2012)).

On appeal, Leseman clarifies that it seeks to depose a witness knowledgeable about the following three categories of documents: (1) documents responsive to Plaintiff's Document Request Numbers 28 and 29, which Stratasys was compelled to produce; (2) documents which Stratasys produced after the close of discovery and after Leseman filed its motion to compel (see Order at 12 [Doc. No. 70]; Letter of 7/15/15 from T. Grimsrud [Doc. No. 65]); and (3) financial information which Stratasys was compelled to produce.[4] (Pl.'s Obj. at 8 [Doc. No. 73].)

It is true, as indicated in the authority cited by the magistrate judge, that a court lacks the authority to compel a party to attend a deposition that was not noticed. See Pegoraro, 281 F.R.D. at 128. Here, however, Plaintiff had previously noticed and taken Rule 30(b)(6) testimony from Defendant, on topics involving sales data and factors relevant to the determination of a reasonable royalty rate. (See Pl.'s Obj. at 9, n.2 & n.3 [Doc. No. 73]) (citing Second 30(b)(6) Dep. Notice, Topics 1 & 14.) But at the time of the previous 30(b)(6) depositions, Leseman did not have the compelled discovery, which is related to the previously-noticed topic areas. Nor did it have certain discovery which Stratasys agreed to produce in a meet and confer held two days prior to Plaintiff's filing

---

[4] Because the Court affirms the magistrate judge's ruling with respect to the written discovery requests at issue, to the extent that Plaintiff initially requested Rule 30(b)(6) testimony extending beyond the scope of the Order, it is denied as moot.

of the Motion to Compel, and which was apparently produced after the filing of Plaintiff's motion.  (See Letter of 7/15/15 from T. Grimsrud [Doc. No. 65]) (agreeing to voluntarily produce the following business planning documents in an effort to narrow the scope of Plaintiff's Motion to compel: "materials road maps, budget plans, product life cycle management documents, and stage gate documents that could be reasonably located for Stratasys's M30, P430, Mojo M30, Mojo SR30, and PPSF products, as well as for any materials processed in research and development with a Multiple Component Die.").  Plaintiff thus lacked the compelled discovery referenced in the Order as well as the business planning documents referenced in Mr. Grimsrud's July 15, 2015 letter [Doc. No. 65] at the time of the prior Rule 30(b)(6) depositions.

      Respectfully, the Court disagrees with the magistrate judge and finds that it would be prejudicial to deny Plaintiff the opportunity to obtain limited Rule 30(b)(6) testimony concerning the documents produced pursuant to the Order and most of the documents referenced in the July 15, 2015 letter.  This limited deposition is aimed at preventing undue prejudice to Leseman caused by the subsequent and/or compelled production of documents.  The areas to be addressed shall be narrowly circumscribed by the contents of the late and/or compelled document productions.  As to the documents referenced in the July 15, 2015 letter, to the extent that Stratasys voluntarily produced documents regarding products for which the magistrate judge did not ultimately compel production, e.g., the Mojo M30 filament product, Stratasys need not produce a Rule 30(b)(6) witness as to any such discovery.  Therefore, as to Plaintiff's request for a limited Rule 30(b)(6) deposition,

the Order is respectfully reversed in part, and Plaintiff's appeal is granted in part. In all other respects, the Order is affirmed and Plaintiff's appeal is likewise denied in part and denied as moot in part, as set forth herein.

**IT IS HEREBY ORDERED** that

1. Plaintiff Leseman, LLC's ("Leseman's") Appeal/Objection [Doc. No. 73] to the December 21, 2015 Order of Magistrate Judge Steven Rau is **DENIED in part, DENIED AS MOOT in part, and GRANTED in part**; and

2. Magistrate Judge Rau's Order of December 21, 2015 [Doc. No. 70] is **AFFIRMED in part and REVERSED in part**.

Dated: March 22, 2016

                                                               s/Susan Richard Nelson
                                                               SUSAN RICHARD NELSON
                                                               United States District Court Judge